MICHAEL J. MANDELBROT, SBN172626
Attorney At Law
11 Bridle Path Lane
Novato, CA  94945
Telephone (415) 895-5175
Telephone: (800) 970-3878
E-Mail: mandelbrot@asbestoslegalcenter.org

Attorney for Mandelbrot Law Firm and
Manville Trust Beneficiaries' Representative

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>    JOHNS-MANVILLE CORPORATION, et al.,<br><br>    Debtors,<br><br>———————————————————<br><br>MANVILLE PERSONAL INJURY SETTLEMENT TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. MANDELBROT and THE MANDELBROT LAW FIRM,<br><br>    Defendants, | Case No. 15-01296<br><br>Case Nos. 82 B 11656 (CGM) Through 82 B 11676 (CGM)<br><br>Memorandum of Points and Authorities in Support of Motion for Sanctions pursuant to Federal Rules of Civil Procedure, Rule 11<br><br>Date of Hearing:  November 19, 2015<br>Time of Hearing:  10:00 a.m.<br>Courtroom No.  610<br>Judge: Hon. Cecelia G. Morris |

1

## Table of Contents

I. INTRODUCTION ................................................................................................................ 6

II. LEGAL STANDARD FOR IMPOSING SANCTIONS AGAINST GARELICK AND RUBINSTEIN ........................................................................................................................ 9

III. GARELICK AND RUBINSTEIN FILED A COMPLAINT FOR IMPROPER PURPOSES; TO HARRASS DEFENDANT, DELAY PAYMENT TO BENEFICIARIES AND TO NEEDLESSLY INCREASE THE COST OF LITIGATION – VIOLATION OF RULE 11(b)(1) ........................................................................................................................ 11

   A. Garelick and Rubinstein File a Patently Frivolous and Defamatory Complaint with an Improper Purpose to Harass Defendant and Delay Claim Payments; Ignoring Court Established Procedures (TDP) ........................................................................................... 11

   B. Under an Objective Standard, Garelick and Rubinstein Ignore Court Established Procedures and File a Complaint with an Improper Purposes to Retaliate, Increase Billable Hours, and to Permanently Bar Defendant from Manville Claims ................................... 12

IV. GARELICK AND RUBINSTEIN FILE A COMPLAINT NOT WARRANTED BY EXISTING LAW – VIOLATION OF RULE 11(b)(2) ........................................................ 13

   A. Garelick and Rubinstein File a Complaint which has Absolutely No Chance of Success under Existing Precedent ....................................................................................... 13

   B. No Case Law Supporting Garelick and Rubinstein's Argument that the Settlement Agreement is the Controlling Document Related to This Dispute ..................................... 14

   C. Garelick and Rubinstein Failed to Adhere to a Court Warning ............................. 15

V. GARELICK AND RUBINSTEIN FILED A COMPLAINT WITH NO EVIDENTIARY SUPPORT -- NO AUDIT OR INVESTIGATION OF DEFENDANT'S MANVILLE CLAIMS AFTER A REASONABLE OPPORTUNITY TO AUDIT – VIOLATION OF RULE 11(b)(3) ...................................................................................................................... 16

   A. Garelick and Rubinstein Fail to Make Reasonable Inquiry into the Evidence ...... 18

VI. CONCLUSION – GARELICK AND RUBINSTEIN HAVE VIOLATED RULE 11(b) AND SANCTIONS ARE APPROPRIATE ......................................................................... 20

PRAYER FOR RELIEF ....................................................................................................... 20

# Table of Authorities

**Cases**

*Abner Realty, Inc. v. Adm'r of GSA*, No. 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS
    11042, at *10-14 (S.D.N.Y. July 17, 1998) .................................................................. 18

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1476 (9th Cir. 1988) ............... 13

*Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997) ....................................... 17

*Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669
    (7th Cir. 2004) ............................................................................................................... 15

*Brown v. Baden* (*In re Yagman*), 796 F.2d 1165, 1182 (9th Cir. 1986) ................................. 17

*Brubaker Kitchens, Inc. v. Brown*, Civil Action No. 05-6756, 2006 U.S. Dist.
    LEXIS 89622, at *10 (E.D. Pa. Dec. 11, 2006) ............................................................. 18

*Burekovitch v. Hertz*, No. 01-CV-1277 (ILG), 2001 U.S. Dist. LEXIS 12173, at *36
    (E.D.N.Y. July 24, 2001) ............................................................................................... 16

*Callahan v. Schoppe*, 864 F.2d 44, 46 (5th Cir. 1989) ............................................................ 19

*Chaudhry v. Gallerizzo*, 174 F.3d 394, 410-11 (4th Cir.), *cert. denied*, 120 S. Ct. 215
    (1999) ............................................................................................................................. 12

*Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ........................................ 17, 18

*Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) ................................................................ 16

*Cross v. Harris Corp.*, Civil Action No. 97-3703, 1998 U.S. Dist. LEXIS 12183, at *5
    (E.D. Pa. Aug. 7, 1998) ................................................................................................. 13

*Deere & Co. v. Deutsche Lufthansa AG.,* 855 F.2d 385, 393 (7th Cir. 1988) ....................... 13

*Eastway Constr. Corp. v. New York*, 762 F.2d 243, 254 (2d Cir. 1985) .......................... 14, 15

*Fobare v. Weiss, Neuren & Neuren*, No. 99-CV-1539, 99-CV-1452, 99-CV-2007,
    2000 U.S. Dist. LEXIS 6905, at *2-3 (N.D.N.Y. May 16, 2000) ................................. 17

*Galasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F. Supp. 2d 569, 577
    (S.D.N.Y. 2004) ............................................................................................................. 15

*Galonsky v. Williams*, No. 96 Civ. 6207 (JSM) ..................................................................... 12

*Glass v. IDS Fin. Servs., Inc.*, 137 F.R.D. 262, 263 (D. Minn. 1991) .................................... 12

*Golden v. California Emergency*, 9th Circuit Court of Appeals, D.C. No. 3:10-cv-00437,
   No. 12-16514 ................................................................................................................ 6

*Goldstein v. Gordon*, No. 3:00- CV-0022-P, 2002 U.S. Dist. LEXIS 3348 (N.D. Tex.
   Feb. 27, 2002) ............................................................................................................ 16

*Hays v. Sony Corp. of Am.*, 847 F.2d 412, 418 (7th Cir. 1988) .............................................. 11

*Holgate v. Baldwin*, 425 F.3d 671, 675-77 (9th Cir. 2005) .................................................... 16

*In re Ginther*, 791 F.2d 1151, 1155 (5th Cir. 1986) ............................................................... 18

*In re Joint E. & S. Dist. Asbestos Litig.,* 78 F.3d 764 (2d Cir. 1996) ..................................... 15

*In re Kunstler*, 914 F.2d 505, 518-20 (4th Cir. 1990) ..................................................... 12, 18

*Jones v. Int'l Riding Helmets*, 145 F.R.D. 120 (N.D. Ga. 1992) ............................................ 18

*Kapco Mfg. v. C & O Enters.,* 886 F.2d 1485, 1492 (7th Cir. 1989) ...................................... 12

*Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114 (S.D.N.Y. 1993) ................................................. 17

*Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986) .............................................. 13, 17

*Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) .................................................................... 14

*Nat'l Asso. of Gov't Employees, Inc. v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216,
   223-24 (5th Cir. 1988) ................................................................................................ 13

*Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120 (1989) ........................................ 18

*R & A Small Engine, Inc. v. Midwest Stihl, Inc.*, 471 F. Supp. 2d 977, 978-79
   (D. Minn. 2007) .......................................................................................................... 17

*Roger Edwards, L.L.C. v. Fiddes & Son,* 227 F.R.D. 19, 23-24 (D. Me. 2005) .................... 17

*Ryan v. Clemente*, 901 F.2d 177, 179-80 (1st Cir. 1990) ....................................................... 19

*Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 659 (7th Cir. 1992) ..................... 15

*Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170
   (2d Cir. 2012) ............................................................................................................... 9

*Stitt v. Williams*, 919 F.2d 516 (9th Cir. 1990) ...................................................................... 13

*Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) ....................... 11, 14

*Tarkowski v. County of Lake*, 775 F.2d 173, 175-76 (7th Cir. 1985) ...................................... 9

15-01296-cgm    Doc 17    Filed 10/06/15    Entered 10/06/15 18:27:13    Main Document
Pg 5 of 20

*Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 801 (W.D. La. 2002) .............................. 15

*Truesdell v. S. Cal. Permanente Med. Group*, 209 F.R.D. 169, 177 (C.D. Cal. 2002) .......... 15

*U.S. Bank Nat'l Ass'n, v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) ....................... 16

*Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1523 (7th Cir. 1992) ................................. 18

*Williams v. Balcor Pension Investors*, 150 F.R.D. 109 (N.D. Ill. 1993) ................................ 18

*Willis v. City of Oakland*, 231 F.R.D. 597, 598 (N.D. Cal. 2005) .......................................... 17

*Wold v. Minerals Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983) ................................... 19

*Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) .............................................................. 12

*Zaldivar v. City of L.A.*, 780 F.2d 823, 832 (9th Cir. 1986) ................................................... 11

**Statutes**

15 U.S.C. §§ 77z-1(c)(3)(A)(ii) and 78u-4(c)(3)(A)(ii) ........................................................ 20

Cal. Bus. & Prof. Code § 16600 ................................................................................................ 6

**Other Authorities**

California Rules of Professional Conduct 5-200 ....................................................................... 6

Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 12(A) (Matthew
    Bender, 3d Ed. 2000) ........................................................................................................ 14

**Rules**

Fed. R. Civ. P. 11 ............................................................................................................. passim

Fed. R. Civ. P. 11(b) .................................................................................................... 8, 11, 18

Fed. R. Civ. P. 11(b)(1) ...................................................................................................... 9, 11

Fed. R. Civ. P. 11(b)(2) .................................................................................................. 9, 13, 14

Fed. R. Civ. P. 11(b)(3) ....................................................................................................... 8, 16

Fed. R. Civ. P. 7(b)(3) ............................................................................................................. 10

## I. INTRODUCTION

Since May 30, 2014, the Manville Trustees and Fiduciaries (hereinafter "Plaintiffs") have suspended the Mandelbrot Law Firm (hereinafter "Defendant") from filing claims with the Manville Trust. Prior to May 2014, Mandelbrot had successfully filed 388 claims with the Manville Trust pursuant to an "Electronic Filing Agreement" (hereinafter, "EFA"), a contract, which required the Manville Trust to process and pay valid claims. A true and correct copy of the EFA in annexed hereto as **Exhibit A**. At no time prior to May 30 2014 had the Trust ever questioned Mandelbrot's reliability or claim filing practices. The sole reason stated by the Trustees and Fiduciaries, by and through counsel, for this suspension of Mandelbrot was an unrelated case in California where Trustees (who are now conspiring with Manville Trustees) accused Defendant of filing unreliable claims on a very finite group of Navy-related exposure claims.[1] Defendant is Appellant in the California case where recent controlling precedent favors Appellant.[2]

---

[1] In the complaint for Declaratory Relief, Plaintiff (falsely) attempts to indicate ONE Manville claim was filed improperly by Mandelbrot in the Hindman matter. To the contrary, the Hindman deposition testimony dated May 28, 2014, clearly displayed Defendant's undeniable honesty, good faith, claim intellect and that Defendant would "never" file an unreliable claim. Defendant's testimony (and later court filings by Jared Garelick) revealed Defendant helped recover thousands of dollars from ill-gotten gains for the Manville Trust AND that Mandelbrot's investigation and tips led to the felony conviction of a former Trust employee who stole from the Manville Trust.

[2] See *Golden v. California Emergency*, 9th Circuit Court of Appeals, D.C. No. 3:10-cv-00437, No. 12-16514 filed for publication April 8, 2015, wherein the panel held that the district court abused its discretion in holding that Cal. Bus. & Prof. Code Section 16600, which provides that a contract (settlement) is void if it restrains anyone from engaging in a lawful professions, did not apply. This is the exact statute and issues raised on Appeal in California by defendant who argued the "settlement agreement" in the Thorpe litigation was void since it restrained defendant from engaging in his lawful profession. Undoubtedly, this case is well known to Garelick and Rubinstein who have colluded with Thorpe Fiduciaries. On October 2, 2015, Defendant brought this controlling precedent to the attention of Thorpe Counsel (who have violated California Rules of Professional Conduct 5-200 – misleading a Judge, knowingly citing invalid authority, failing to cite adverse controlling authority) and is awaiting a response.

6

Counsel for the Trustees who informed Mandelbrot of the suspension and filed the instant Complaint are Jared Garelick (hereinafter "Garelick") and Jason Rubinstein (hereinafter "Rubinstein"). At all times, Defendant has urged the Trust, through Manville Trust General Counsel Garelick and outside Counsel Rubinstein, to remove the unauthorized suspension of Defendant's claim filing privileges and to follow the Manville Trust Distribution Procedures ("TDP") and audit Defendant's Manville claims. Nonetheless, the Manville Trust, by and through Counsel Rubinstein, refused to follow the TDP and remove the suspension or to audit claims. Month after month, Counsel Rubinstein badgered Defendant and stated that no suspension would be lifted and no audit would be conducted until the (Defendant's) Appeal in the California case (*Thorpe* case) is finally resolved. Defendants even requested to Rubinstein to "just assume I am going to lose the Appeal for the purposes of going forward with Defendant's Manville claims."[3] Rubinstein and Garelick never responded.

To further harass Defendant, Garelick and Rubinstein, on behalf of the Trustees, attempted to extort claims from Defendant by indicating that the only way pending beneficiary claims represented by Defendant would be reviewed is if Defendant *withdrew* every pending Manville Beneficiaries Trust claim (over 100) and then *transferred the claims* to another attorney for filing. Clearly, at this time, there was collusion taking place among Garelick, Rubinstein and Manville Fiduciaries, who were also Thorpe Fiduciaries.[4]

---

[3] From August 2014 to September 2015 (after Defendant provided Garelick and Rubinstein with his testimony in the *Hindman* matter), Rubinstein and Garelick never again mentioned the *Hindman* claim (filed by the convicted felon) as a basis for the suspension. Rubinstein and Garelick are now misleading the Court and providing facts inconsistent with the truth relating to the *Hindman* claim.

[4] In another attempt to mislead this Court, Plaintiffs' Complaint fails to mention that the Trustees were *forcing Defendant to withdraw claims and then transfer them to another attorney for re-filing*. This position taken by Garelick and Rubinstein is the exact same position taken by another Trust colluding with Garelick and Rubinstein (General Motors Trust).

Finally, after over a year of harassment, delays and bad faith by Manville Trustees and Counsel in the suspension of Defendant and failure to audit Defendant's Manville claims, Defendant filed an Objection to the Manville Trust's Annual Accounting in hopes this Court would provide guidance. On July 16, 2015, this Court provided guidance to the Trust, Plaintiff, Rubinstein and Garelick. Your Honor clearly indicated on that date in open Court that the Trust didn't "have the authority" to suspend a claimant's representative (specifically referring to defendant), that Defendant's Manville claims "should have been audited already" and that the Manville Trust must do something to "look at those (Manville) claims." A true and correct copy of the Court Transcript of July 16, 2015 is annexed hereto as **Exhibit B**. Moreover, this Court implicated that Defendant's due process rights had been violated by the suspension.

Immediately after the hearing, Defendant communicated with Rubinstein and requested the Trust lift the suspension and audit Defendant. Rubinstein, despite multiple requests, refused and indicated that the Trustees would address the issue in late August (more delays, harassment, and bad faith). A true and correct copy of Defendant's e-mail to Rubinstein is annexed hereto as **Exhibit C**.

On September 2, 2015, wholly ignoring this Court's instructions, Plaintiffs filed a Complaint against Defendant for nothing more than declaratory relief which violated Fed. R. Civ. P. 11(b). Counsel who verified the Complaint is Jared Garelick. Counsel who filed the Complaint is Jason Rubinstein.

This Complaint wholly violated Rule 11 of the Federal Rules of Civil Procedure and represents a presentation of a pleading or other paper to the court that *improperly and unethically* certifies that, to the best of Rubinstein and Garelick's knowledge and belief, "formed after an inquiry reasonable under the circumstances," the factual contentions thereof "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" Fed. R. Civ. P. 11(b)(3). Moreover, the instant Complaint filed by Rubinstein and Garelick against

Defendant is designed to harass Defendant and beneficiaries of the Trust, with the improper purpose of delaying payment of claims to beneficiaries and to needless increase the cost of litigation for defendant (while "padding Rubinstein's pockets" with more improper billing). Fed. R. Civ. P. 11(b)(1). In addition, Garelick's and Rubinstein's presentation of a pleading, written motion or other papers improperly and incorrectly contains a certification that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

Defendant has provided Garelick and Rubinstein with a 21-day "safe harbor" period to withdraw or correct the challenged pleading. In the letter, Mandelbrot complied with the safe harbor requirement because the letter and notice of motion identified the basis for the sanctions motion and provided Garelick and Rubinstein sufficient information to make a professional judgment whether the complaint was frivolous and should be withdrawn. See *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170 (2d Cir. 2012). A true and correct copy is annexed hereto as **Exhibit D**. Garelick and Rubinstein failed to withdraw or correct the challenged pleading and threatened a Rule 11 Motion against Defendant. As a result, Defendant respectfully requests this Court to impose disciplinary sanctions against Plaintiff, to strike Plaintiff's pleading, and for a specific finding of "bad faith."

## II. LEGAL STANDARD FOR IMPOSING SANCTIONS AGAINST GARELICK AND RUBINSTEIN

The Federal Rule of Civil Procedure Rule 11 provides for the striking of pleadings and the imposition of disciplinary sanctions on attorneys or pro se litigants who abuse the signing of pleadings. Rule 11 was promulgated to limit abuses and bad faith acts by attorneys and pro se litigants in court. *Tarkowski v. County of Lake*, 775 F.2d 173, 175-76 (7th Cir. 1985). Rule 11 takes effect when the attorney or pro se litigant advocates or reaffirms to the court a position contained in a pleading after learning that the position

9

ceases to have merit. Generally, Rule 11 was enacted to require litigants to "stop and think" before making assertions in court. Fed.R.Civ.P. 11 advisory committee notes.

The provisions of Rule 11 apply to motions and other papers by incorporation of Rule 11 into the Federal Rule of Civil Procedure 7(b)(3), which expressly states that "[a]ll motions shall be signed in accordance with Rule 11." The key text of Rule 11 is as follows:

> **Rule 11.** Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions
>
> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> Sanctions under Rule 11:
>
> (1) it is not being presented for <u>*any* improper purpose</u>, such as <u>to harass or to cause unnecessary delay or needless increase in the cost of litigation</u>;
>
> (2) the claims, defenses, and other legal contentions therein are <u>warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law</u>;
>
> (3) the allegations and other factual contentions <u>have evidentiary support</u> or, if specifically so identified, are likely to have evidentiary support *after* a <u>reasonable opportunity for further investigation or discovery</u>;
>
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, <u>impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation</u>. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys' fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
>
> (B) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is <u>sufficient to deter repetition of such conduct or comparable conduct by others similarly situated</u>. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
> (Emphasis added).

In the Rule 11 setting the victims are the lawyer's adversary, other litigants in the court's queue, and the court itself." *Hays*, 847 F.2d at 418. *See Szabo Food Serv.*, 823 F.2d at 1077. ("Unnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard.")

In the instant matter, Garelick and Rubinstein have by presenting to this Court and certified under information and belief a Complaint against defendant which violates all aspects of Rule 11(b). The Complaint filed by Garelick and Rubinstein against Defendant was filed for an improper purpose (i.e., harassment, delay, and needless expense), the claims were not warranted by <u>any</u> existing law, and the factual contentions against defendant had no evidentiary support as Garelick and Rubinstein had never audited one Manville claim filed by Defendant.

### III. GARELICK AND RUBINSTEIN FILED A COMPLAINT FOR IMPROPER PURPOSES; TO HARRASS DEFENDANT, DELAY PAYMENT TO BENEFICIARIES AND TO NEEDLESSLY INCREASE THE COST OF LITIGATION – VIOLATION OF RULE 11(b)(1)

Federal Rules of Civil Procedure, Rule 11(b)(1) provides that the signer of a pleading, written motion, or other papers presented to the court, certifies to his/ her best knowledge that the claims, defenses, and other legal contentions "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Rule 11 requires the signer to certify both as to the factual and legal merits and a proper purpose for the pleading involved. *See Zaldivar*, 780 F.2d at 832. Here, Garelick verified the Complaint "on information and belief" and it was filed by Rubinstein.

A. **Garelick and Rubinstein File a Patently Frivolous and Defamatory Complaint with an Improper Purpose to Harass Defendant and Delay Claim Payments; Ignoring Court Established Procedures (TDP)**

Courts have inferred an intent to harass where the claim is patently frivolous and the situation indicates the filing party has some motive to harass, such as retaliation. See

11

*Chaudhry*, 174 F.3d at 410-11 (sanctions upheld where trial court determined that plaintiffs brought claims against debt collectors based on evidence that no "rational person" would have believed supported their claim). In addition, courts take a variety of factors and circumstances into consideration in deciding whether a filing was for the purpose of harassment. See *Galonsky v. Williams*, No. 96 Civ. 6207 (JSM).

Here, under an objective standard, the clear goal of Garelick and Rubinstein is to harass defendant (the beneficiaries' representative) by filing a defamatory Complaint which requests relief for which no legal authority exists. The instant Complaint is patently frivolous and the facts indicate the filing party (Garelick and Rubinstein) has some motive to harass and to retaliate against Defendant as Defendant has regularly accused Garelick and Rubinstein of engaging in collusion, bad faith and corruption.

**B. Under an Objective Standard, Garelick and Rubinstein Ignore Court Established Procedures and File a Complaint with an Improper Purposes to Retaliate, Increase Billable Hours, and to Permanently Bar Defendant from Manville Claims**

Courts have found that a pleading or motion was prompted by an improper purpose in cases in which the movant stands to benefit from delay. *See Wright*, 39 F.3d at 158. Courts also have found an improper purpose when a party deliberately chooses to ignore court-established procedures for expeditiously resolving a matter, and instead files unnecessary and multiplicitous papers. *Kapco Mfg.*, 886 F.2d at 1492; *Glass*, 137 F.R.D. at 263 (plaintiff's law firm and defendant's law firm were sanctioned $50,000 each for exceeding court imposed page limit by over 600 pages). Here, Garelick and (especially) Rubinstein clearly stands to benefit from the delay with increased billable hours. Moreover, any delay benefits Garelick's interest in another Trust for which he is a Fiduciary.

Federal courts have generally evaluated charges of improper purpose by looking at the facts of the case, the reasonableness of the pleadings, and the circumstances in which the suit was filed. The standard most frequently used in the inquiry has been an objective one. See, e.g., *In re Kunstler*, 914 F.2d 505, 518-20 (4th Cir. 1990) (objective standard based on

12

circumstances of filing); *Deere & Co. v. Deutsche Lufthansa AG., 855* F.2d 385, 393 (7th Cir. 1988); *Nat'l Asso. of Gov't Employees, Inc. v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 223-24 (5th Cir. 1988); *Lieb*, 788 F.2d at 157; *Cross*, 1998 U.S. Dist. LEXIS 12183, at *5. "The challenge facing the court, therefore, is to construe the Rule in a manner that will promote the goal of limiting harassment, delay and expense, without impeding zealous advocacy or freezing the common law in the status quo." *Aetna Life Ins. Co.*, 855 F.2d at 1476; *accord Stit*t, 919 F.2d 516. Courts infer the purpose of a filing from the consequences of the pleading or motion. For example, an improper purpose may be inferred when the effect of a pleading or motion is to <u>delay the proceedings</u>.

Here, the proceedings (claim processing) have already been improperly delayed over 1 year, evidence has been lost forever (clients have passed away) and the expense has increased. Moreover, the Plaintiffs stand to benefit from the delay and litigation through increased billable hours and through their corrupt interests with other Trust Fiduciaries with whom Defendant has disputes.

## IV.   GARELICK AND RUBINSTEIN FILE A COMPLAINT NOT WARRANTED BY EXISTING LAW – VIOLATION OF RULE 11(b)(2)

Rule 11 provides that a pleading, motion, or paper must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Rule 11(b)(2). The presentation of a pleading, written motion or other papers that contains a certification that "the claims, defenses and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2).  The rule is violated where the claims are not so warranted.

### A. <u>Garelick and Rubinstein File a Complaint which has Absolutely No Chance of Success under Existing Precedent</u>

A violation of Fed. R. Civ. P. 11(b)(2) is shown where it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and no reasonable

13

argument can be advanced to extend, modify or reverse the law as it stands. *See Eastway Constr. Corp.*, 762 F.2d at 254.

This standard is also violated if no plausible good faith argument can be made by a competent attorney to the contrary. The rule under subsection (b)(2) establishes an objective standard that is designed to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. See *Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000).

In the instant case, under an objective standard, Garelick and Rubinstein have brought a Complaint which is not warranted under existing law. In fact, Garelick and Rubinstein do not cite one case for the proposition that a Trustee of an asbestos trust can (without due process) suspend and permanently bar an attorney from filing claims with an asbestos trust. The arguments put forth by Garelick and Rubinstein are totally frivolous. Under an objective standard, Rubinstein and Garelick should have audited Defendant in May 2014 (without suspending claims) and simply followed the TDP which specifically addresses audits (and favoritism). Moreover, Garelick and Rubinstein's incompetent ignorance of the TDP (despite an urging by Defendant to audit) is clearly bad faith.

    B. **<u>No Case Law Supporting Garelick and Rubinstein's Argument that the Settlement Agreement is the Controlling Document Related to This Dispute</u>**

As with factual contentions, legal contentions are subject to an <u>objective</u> — not a subjective — standard (emphasis added). The 1993 rule's "nonfrivolous" language clearly indicates the objective standard. However, courts generally agreed that the "good faith" language of the 1983 rule incorporated a notion of objective reasonableness. *Szabo Food Serv.*, 823 F.2d at 1081-82; *Eastway Constr. Corp.*, 762 F.2d at 254, modified, 821 F.2d 121 (2d Cir. 1987); see also Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 12(A) (Matthew Bender, 3d Ed. 2000).

*Every case* researched by Defendant (and Plaintiff's Victim Impact Statement) indicate that the TDP is the controlling document and not the "Trust Agreement" as alleged

14

by the Plaintiffs in this case. *See In re Joint E. & S. Dist. Asbestos Litig., 7*8 F.3d 764 as an example wherein it states:

> The Settlement Agreement provides that the rights and duties of the Trust and all class members, except as specified, are to be governed by an annexed document entitled Trust Distribution Process ("TDP"). The TDP sets forth the procedures for processing and evaluating claims against the Trust on a "first-in-first-out" basis "with the intention of paying all claimants over time as equivalent a share as possible of their claims' values." (TDP at 1.).

For the Plaintiff to now allege the Trust Agreement is the controlling document relating to this dispute is "bad law and bad faith." Garelick's own Victim Impact Statement, filed May 26, 2015, states, "claims re resolved following procedures set forth in a document approved by the federal courts called the Manville Trust Distribution Process." See Victim Statement and Request for Restitution, dated May 26, 2015, annexed hereto as **Exhibit E**.

### C. <u>Garelick and Rubinstein Failed to Adhere to a Court Warning</u>

A judge's warning may provide a litigant with more certain knowledge that a position is frivolous; if the attorney then later advocates the position, he or she is exposed to the risk of sanctions. See *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan, 37*8 F.3d 669 (7th Cir. 2004) (upholding sanctions for amending complaint to state claims previously dismissed with prejudice); *Smith v. Blue Cross & Blue Shield United, 95*9 F.2d 655, 659 (7th Cir. 1992) (upholding sanctions where suit had "no chance of success under existing precedent"); *Eastway Constr. Corp.*, 762 F.2d at 254 (Rule 11 is violated when "it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands."), modified, 821 F.2d 121 (2d Cir. 1987); *Galasso v. Eisman, Zucker, Klein & Ruttenberg, 31*0 F. Supp. 2d 569, 577 (S.D.N.Y. 2004) (sanctions appropriate where applicable exemptions were clear from text of FLSA and state labor law); *Todd v. City of Natchitoches*, 238 F. Supp. 2d 793, 801 (W.D. La. 2002) (sanctions imposed where plaintiff "offers no case law to support [his claim], and the case law that is cited is frequently irrelevant or misconstrued"); *Truesdell*, 209 F.R.D. at 177 (sanctions imposed where attorney presented "absolutely no authority" undermining a clear line of precedent);

15

*Goldstein v. Gordon*, No. 3:00- CV-0022-P, 2002 U.S. Dist. LEXIS 3348 (N.D. Tex. Feb. 27, 2002) (sanctions appropriate for tortured reading of the law and resultant misrepresentation to court); *Burekovitch*, 2001 U.S. Dist. LEXIS 12173, at *36 (sanctions imposed where "plaintiff failed to identify or discuss any authority" that suggested his claim was permissible under the Uniform Standards Act or Delaware law).

On July 16, 2015, this Court provided clear guidance to Garelick and Rubinstein that the suspension of Defendant was "unauthorized" (frivolous) and Garelick and Rubinstein failed to follow this Court's instructions and filed the instant Complaint. This Court indicated to Garelick and Rubinstein that they "had to do something to process the claims," no "due process" had taken place and that the Trustees "should have audited" Defendant's claims. Garelick and Rubinstein failed to follow the Court's warning in all respects by filing this Complaint. In addition, the Complaint failed to cite or discuss <u>any relevant authority</u>.

## V. GARELICK AND RUBINSTEIN FILED A COMPLAINT WITH NO EVIDENTIARY SUPPORT -- NO AUDIT OR INVESTIGATION OF DEFENDANT'S MANVILLE CLAIMS AFTER A REASONABLE OPPORTUNITY TO AUDIT – VIOLATION OF RULE 11(b)(3)

The presentation of a pleading or other paper to the court certifies that, to the best of that person's knowledge and belief, "formed after an inquiry reasonable under the circumstances," the factual contentions thereof "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

The 1993 rule imposes an affirmative <u>duty to investigate</u> just as the 1983 Rule 11 did. See *Holgate v. Baldwin*, 425 F.3d 671, 675-77 (9th Cir. 2005) (an attorney must conduct an objectively reasonable inquiry into the facts and law to make sure the complaint is well-founded); *U.S. Bank Nat'l Ass'n*, 406 F.3d at 470 (Rule 11 requires counsel to read and consider relevant court documents before litigating); *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) ("To constitute a reasonable inquiry, the prefiling investigation must uncover a

16


factual basis for the plaintiff's allegations, as well as a legal basis."); *Battles v. City of Ft. Myers*, 127 F.3d 1298, 1300 (11th Cir. 1997) (attorney for Section 1983 plaintiff sanctioned for failing to conduct reasonable factual investigation). Rule 11 requires lawyers to think first and file later, on pain of personal liability."); *Lieb*, 788 F.2d at 157. (Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'") *R & A Small Engine, Inc. v. Midwest Stihl, Inc.*, 471 F. Supp. 2d 977, 978-79 (D. Minn. 2007) (to satisfy the requirements of Rule 11, an attorney is obligated to conduct a reasonable inquiry into the factual and legal basis for a claim); *Willis v. City of Oakland*, 231 F.R.D. 597, 598 (N.D. Cal. 2005) (attorney did not conduct an adequate investigation before filing complaint and was liable for Rule 11 sanctions); *Roger Edwards*, 227 F.R.D. at 23-24 (an attorney has an affirmative duty to inquire into the facts and law before filing a pleading; the inquiry must be reasonable under the circumstances.) *Fobare v. Weiss, Neuren & Neuren*, No. 99-CV-1539, 99-CV-1452, 99-CV-2007, 2000 U.S. Dist. LEXIS 6905, at *2-3 (N.D.N.Y. May 16, 2000) (sanctions appropriate where attorney engaged in the "cookie-cutter" practice of law, filing form complaints without conducting inquiry into their validity with respect to each client). The 1993 rule clarifies that the reasonableness of an investigation must be assessed in light of the circumstances of each case, as the rule requires "an inquiry reasonable under the circumstances." Rule 11(b). See also *Brown v. Baden* (*In re Yagman*), 796 F.2d 1165, 1182 (9th Cir. 1986) (evaluating investigation, under 1983 rule, in light of circumstances). At a minimum, some affirmative investigation on the part of the attorney is required. See *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (sanctions imposed where attorney could have obtained needed copyright information simply by examining Barbie doll heads); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114 (S.D.N.Y. 1993) (attorneys' failure to cite any relevant case law showing why claims were not barred by statute of limitations, why plaintiff's lack of diligence should be excused, or why RICO claims could be supported by conclusory pleading demonstrated that counsel "failed to conduct the requisite inquiry into the facts and the law"); *Williams v. Balcor Pension Investors*, 150 F.R.D. 109 (N.D. Ill.

17

1993) (sanctions awarded where attorneys "failed to make reasonable inquiry to determine whether the crux of plaintiffs' claim was factually and legally tenable").

Counsel must explore readily available avenues of factual inquiry. *Christian*, 286 F.3d at 1129 (sanctions imposed where attorney could have obtained needed copyright information simply by examining Barbie doll heads); *Abner Realty, Inc. v. Adm'r of GSA*, No. 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042, at *10-14 (S.D.N.Y. July 17, 1998) (sanctions imposed where the needed facts could have been obtained in a number of ways, including a LEXIS/NEXIS or Internet search or through inquiry to the Registrar of Deeds); *Jones v. Int'l Riding Helmets*, 145 F.R.D. 120 (N.D. Ga. 1992) (sanctions imposed where even "[t]he most minimal investigation" would have revealed company's incorporation date and, thus, that company was not a proper party to the suit), *aff'd*, 49 F.3d 692 (11th Cir. 1995). One court has held that an attorney's total reliance on another attorney to evaluate the facts and prepare the complaint is itself a Rule 11 violation. *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) (citing *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120 (1989)).

The use of the words "reasonable under the circumstances" in the 1993 rule codifies the courts' previous conclusion that the thoroughness of the inquiry required by Rule 11 depends in part upon **the time** available for investigation. Rule 11(b).

### A. Garelick and Rubinstein Fail to Make Reasonable Inquiry into the Evidence

All evidence in client's hands must be reviewed. Absent time pressures, a reasonable inquiry requires that counsel interview the available witnesses and prior legal representatives. See *Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1523 (7th Cir. 1992) (upholding sanctions award against plaintiff's attorney who failed to interview attorneys who represented plaintiff in related proceedings and other available witnesses); *In re Ginther*, 791 F.2d at 1155; *Brubaker Kitchens, Inc. v. Brown*, Civil Action No. 05-6756, 2006 U.S. Dist. LEXIS 89622, at *10 (E.D. Pa. Dec. 11, 2006) (holding that, given the absence of time pressures, counsel should have interviewed employee to verify client's

speculative statements about a defendant's involvement); *Wold v. Minerals Eng'g Co.*, 575 F. Supp. 166, 167 (D. Colo. 1983) (cursory telephone conversation insufficient). <u>Counsel should also review the relevant documents that are available to his or her client</u> and explore other readily available avenues of inquiry, see *Callahan v. Schoppe*, 864 F.2d 44, 46 (5th Cir. 1989) (assuming that only listing in telephone directory is the proper defendant is not reasonable inquiry). (Emphasis added). In the absence of investigation, counsel cannot carelessly or deliberately represent inferences as facts. *Ryan*, 901 F.2d at 179-80.

In the instant matter, Garelick and Rubinstein did not "stop, look and listen," or review any relevant documents before filing the instant Complaint. Garelick and Rubinstein violated their own Trust Distribution Procedures and failed in their affirmative duty to investigate before filing the instant Complaint. Garelick and Rubinstein had access to over 500 Manville claims filed by defendant <u>and never audited one before filing the instant Complaint</u>. Had Garelick and Rubinstein used available resources and an audit been conducted of Defendant's Manville claims pursuant to the Trust's *own procedures*, no factual basis for the allegations in plaintiff's Complaint would exist. Garelick and Rubinstein failed in their affirmative duty to inquire into the facts of Defendant's Manville claims and the law before filing the instant Complaint.[5] Moreover, Rubinstein and Garelick *do not cite one relevant case or point to one improperly filed Manville claim* by Defendant for the proposition that an asbestos Trustee may permanently bar an attorney from filing claims solely based on acts alleged by another Trust.[6] As such, the instant case filed by Garelick

---

[5] Facts well known to Plaintiffs: Defendant's tips to the F.B.I. led to the capture and felony conviction of a former asbestos trust employee John Lynch. At sentencing, Garelick (finally) credited Mandelbrot for this conviction. This letter filed in Court and signed by Garelick under oath clearly undermines the entire theory of the Trust's malicious complaint by stating that the TDP is the controlling document.

[6] As Defendant has alleged on a number of occasions, the conduct of Garelick, Rubinstein and the Trustees amounts to corruption, bad faith and fraud. The clear goal by Garelick and Rubinstein by filing the instant Complaint is to set a precedent for other Trusts which share the *exact same Fiduciaries* (about 25 Trusts – which violates Department of Justice Rules) and are currently colluding with the Manville fiduciaries.

19

and Rubinstein is not an attempt at extension or reversal of existing law (since there is no existing law), but simply a bad faith in attempt to harass, retaliate against, and to harm Defendant.

## VI. CONCLUSION – GARELICK AND RUBINSTEIN HAVE VIOLATED RULE 11(b) AND SANCTIONS ARE APPROPRIATE

If a complaint is in "substantial" violation of Rule 11, the presumptively appropriate sanction is an award of all of the defendant's attorneys' fees and other expenses for defending the action. 15 U.S.C. §§ 77z-1(c)(3)(A)(ii) and 78u-4(c)(3)(A)(ii). Sanctions may also be awarded to deter future conduct. Sanctions of at least $50,000 to Garelick and Rubinstein (and a finding of bad faith) to deter future conduct is appropriate.

### PRAYER FOR RELIEF

**WHEREFORE,** the Defendant respectfully requests relief as follows:

A. Striking the Plaintiffs' Complaint

B. Impose Disciplinary Sanctions, including Costs, Attorney Fees and Other appropriate sanctions as this Court deems just and proper to deter future conduct.

C. A finding of "Bad Faith" against Garelick and Rubinstein.[7]

Dated: October 6, 2015          /s/ Michael Mandelbrot
                                                   MICHAEL J. MANDELBROT
                                                   Attorney for Beneficiaries

---

[7] If Defendant is successful with this Rule 11 Motion, Garelick and Rubinstein are likely to rely on the Manville Trust By-Laws Section 11 (Indemnification) which provides for Manville "agents" Indemnification. However, Garelick and Rubinstein may only seek indemnification provided they "acted in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the Trust and . . . had no reasonable cause to believe his or her conduct was unlawful." Here, Garelick and Rubinstein acted in "bad faith" and in a manner not in the best interest of the beneficiaries or the Trust or their representatives.