__NOT FOR PUBLICATION__

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X

| | | |
|---|---|---|
| *In re:* | : | Chapter 11 |
| | : | Case Nos. 82 B 11656, |
| Johns-Manville Corporation, et al., | : | 82 B 11657, 82 B 11660, |
| | : | 82 B 11661, 82 B 11665 through |
| | : | 82 B 11673 inclusive, |
| Debtors. | : | 82 B 11675, 82 B 11676 (CGM) |

------------------------------------------------------- X

| | | |
|---|---|---|
| Manville Personal Injury Settlement Trust, | | |
| | : | |
| Plaintiff | : | |
| v. | : | Adv. Pro. No. 15-01296 (CGM) |
| | : | |
| Michael J. Mandelbrot and the Mandelbrot | : | |
| Law Firm, | : | |
| Defendants | | |

-------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR JUDGEMENT**
**ON THE PLEADINGS AND DENYING MOTION FOR SANCTIONS**

**A P P E A R A N C E S :**
Friedman Kaplan Seiler & Adelman LLP
7 Times Square
28th Floor
New York, NY 10036
*Attorneys for Plaintiff*
      By:    Jason C. Rubinstein
              Timothy M. Haggerty


Sullivan Hazeltine Allison LLC
901 North Market Street
Suite 1300
Wilmington, DE 19801
*Attorneys for Defendants*
      By:    William D. Sullivan

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Before the Court is Plaintiff Manville Personal Injury Settlement Trust's ("Trust")

motion for a declaratory judgment and for dismissal of Defendants', Michael J. Mandelbrot

("Mandelbrot"), and his law firm, the Mandelbrot Law Firm (collectively "Defendants")

counterclaims.  The Trust seeks a declaratory judgment that the trustees of the Trust ("Manville

Trustees" or "Trustees") have discretion to suspend the Defendants from filing claims against the

Trust and that the Trustees have discretion to suspend the processing of claims filed by

Defendants.  Also before the Court is Defendants' motion for sanctions against the Trust.

For the reasons stated herein, the Court declares that the Manville Trustees have

discretion to suspend Defendants from filing claims against the Trust but do not have discretion

to suspend the processing of the claims filed by Defendants against the Trust.  The Court also

denies Defendants' motion for sanctions.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  Paragraph 28(b) of the order confirming Debtor, Johns-Manville

Corporation's ("Johns-Manville" or the "Debtor"), Second Amended and Restated Plan of

Reorganization states that "[t]he Court herby retains jurisdiction . . . to determine any and all

disputes arising under the Plan, [and] Trust Agreement."  Rubinstein Decl. Opp'n to Sanctions

Ex. B, at ¶ 28(b), ECF No. 24 ("Confirm. Order").[1]  Section 6.13 of the Debtor's Trust

---

[1] Unless otherwise indicated, all documents cited in this case were filed on the docket of adversary proceeding 15-01296.

Agreement provides that "the United States Bankruptcy Court for the Southern District of New

York shall have exclusive jurisdiction to hear and resolve any and all matters relating to the

powers and authority of the Trustees hereunder, any actions or omissions by them, the operations

or activities of the Trust and the interpretation of this Agreement."  Compl. Ex. C, at § 6.13, ECF

No. 1 ("Trust Agmt").

### **Background**

On August 26, 1982, Johns-Manville, the largest North American producer of asbestos

and asbestos-containing products at that time, filed a petition under chapter 11 of the Bankruptcy

Code due to its projected asbestos-related personal injury liabilities.  As part of the Debtor's plan

of reorganization, the Trust was established to provide the exclusive remedy for those seeking

compensation for existing and future health claims caused by exposure to asbestos in Johns-

Manville products.

In a letter dated May 30, 2014, the Trust, through counsel, informed Defendants that it

was suspending the processing of claims filed by Mandelbrot and the Mandelbrot Law Firm

against the Trust (the "Claims").  Objection to Account of Trustees at Ex. A, at 1–2 (Ltr. from

Counsel to Mandelbrot).  The suspension was "effective immediately."  *Id.* at 1.  The Trust based

its decision to suspend the Claims after it determined that Mandelbrot and the Mandelbrot Law

Firm "engaged in a pattern and practice of filing unreliable evidence to support claims filed with

[other] asbestos bankruptcy trusts."  *Id.* at 3.

On June 9, 2015, the Trust filed an application for approval of its "Account of Trustees

and Financial Statements of the Manville Personal Injury Trust" ("Account of Trustees") for the

year 2014.  Affidavit of Garelick, *In re Johns-Manville*, No. 82-11656, ECF No. 4158.  On July

1, 2015, Mandelbrot filed an objection to the application.  Objection to Account of Trustees, *In*

*re Johns-Manville*, No. 82-11656, ECF No. 4162.  In his objection, Mandelbrot argued that the

Manville Trustees' accounting of the Trust for 2014 was inaccurate as the Trust had suspended

hundreds of claims filed by him on behalf of his clients. Objection to Account of Trustees at Ex.

A, at 1–2 (Ltr. from Counsel to Mandelbrot).  On July 9, 2015, the Trust filed a response.  *In re

Johns-Manville*, No. 82-11656, Resp., ECF No. 4166.  The Court held a hearing to consider the

papers on July 16, 2015 ("July 16, 2015 Hearing").  Tr. of July 16, 2015 Hr'g, *In re Johns-

Manville*, No. 82-11656, ECF No. 4170.

At the July 16, 2015 Hearing, the Court approved the Trust's Account of Trustees and

expressed concerns over the suspension of the Claims.  *Id.* at 18:2–3.  Specifically, the Court was

concerned that Defendants and the individuals on behalf of whom Defendants filed Claims

("Claimants") did not receive adequate notice of the suspension.  *Id.* at 20:20–22 ("THE

COURT:  And so you can do whatever is necessary to process those claims, but you can move

quickly to suspend the Mandelbrot parties, but you've got to look at those claims.  MR.

GARELICK:  Okay.  That's understood, Your Honor.  THE COURT:  They should be allowed

claims right now, and they maybe should be paid . . . .").  The Court questioned whether the

Claimants' due process rights had been violated.  *Id.* at 20:14 ("THE COURT:  Get a notice.  I

want due process.").  The Court indicated it would consider a motion regarding the status of

Mandelbrot and the Claimants.  *Id.* at 18:9.

In response to the Court's comments at the July 16, 2015 Hearing, the Trust filed an

adversary proceeding against Mandelbrot and the Mandelbrot Law Firm on September 2, 2015.

The Trust's complaint ("Complaint") alleges that under the law of trusts, a court should not

interfere with a trustee's exercise of his discretionary powers unless the trustee acts dishonestly,

with an improper motive, or acts beyond the bounds of reasonable judgment.  Compl. ¶ 2.   The

Trust asks the Court, via the Complaint, to enter a declaratory judgment

> that the Manville Trustees have discretion under the Trust Agreement to disallow
> the submission and processing of claims filed by an attorney who has admitted that
> he is not a reliable source of claims and claim-related evidence and been
> adjudicated by a court to be unreliable, and that the exercise of such discretion is
> not open to judicial review unless the Manville Trustees acted dishonestly, with an
> improper motive, or beyond the bounds of reasonable judgment.

*Id.* ¶ 71.  Attached to the Complaint are thirteen exhibits.  Defendants filed an answer

("Answer") asserting affirmative defenses and counterclaims, including tortious interference

with contractual relations; breach of the duty of loyalty; breach of the duty of impartiality; and

breach of the duty of good faith and fair dealing.  Ans., ECF No. 15.  The Trust filed an answer

to the counterclaims.  Counterclaim Ans., ECF No. 18.

On October 15, 2015, the Trust filed a motion for judgment on the pleadings ("Motion")

Mot., ECF No. 20. The Trust asks the Court to enter a declaratory judgment in its favor and

seeks to dismiss all of the Defendants' counterclaims.  *Id.* at 33.  The Trust argues that that the

Manville Trustees have discretion under the agreement governing the Trust ("Trust Agreement")

to disallow the submission and processing of claims filed by an attorney who is "unreliable." *Id.*

at 17.  The Trust asks the Court for a judgment declaring that the Manville Trustees' exercise of

such discretion is not open to judicial review unless they act dishonestly, with an improper

motive, or beyond the bounds of reasonable judgment.  *Id.*

The Defendants oppose the Trust's Motion ("Opposition") on the grounds that the Trust

is seeking an advisory opinion from the Court that the Manville Trustees have general power to

suspend a lawyer from filing claims against the Trust.  The Defendants concede that it would not

be an advisory opinion if the Trust were seeking a determination specific to the Trust's actions

against them.[2]  Opp'n 1, ECF No. 26.  Defendants also argue that judgment on the pleadings is

not proper as there are material facts in dispute and, as such, the Court should convert the Motion

to a motion for summary judgment.  *Id.* at 4.  Defendants argue that by suspending the Claims,

the Trust violated the Trust's formal distribution process, and the Manville Trustees abused their

discretion.  *Id.* at 9–11.

Also before the Court is Defendants' motion for sanctions.  Mot. Sanctions, ECF No. 17.

The Defendants ask the Court to strike the Complaint and impose sanctions against the Trust

including costs and attorney fees.  Mot. Sanctions 20.   The Trust has filed opposition to that

motion. Opp'n, ECF No. 24.

The Court heard oral argument on November 19, 2015 and then took the matters under

advisement.  Tr. of Oral Argument, Nov. 19, 2015, ECF No. 51.  The Court has considered only

those papers that were filed prior to the November 19, 2015 hearing.[3]  Additional briefing was

neither requested nor proper.

## Discussion

1. Motion for Judgment on the Pleadings

The Trust moves for judgment on the pleadings pursuant to Federal Rule of Civil

Procedure 12(c), which is made applicable to this adversary proceeding by Federal Rule of

Bankruptcy Procedure 7012.  Rule 12(c) provides that "[a]fter the pleadings are closed – but

early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ.

P. 12(c).  The Rule goes on to state that "[i]f, on a motion under Rule . . . 12(c), matters outside

---

[2] Because the Court advised the parties that they should file a motion regarding the Claims at the July 16, 2015 hearing, the Court will treat the motion as one seeking a determination regarding whether suspending Defendants and the Claims was within the discretion of the Manville Trustees.

[3] The Court notes that the parties filed a series of post-argument letters, which are found at docket numbers 50, 52, and 53.  The Court did not read or consider these letters in connection with this Memorandum Decision.

the pleadings are presented to and not excluded by the court, the motion must be treated as one

for summary judgment . . . ."  Fed. R. Civ. P. 12(d).  Defendants argue that the Court should treat

the Motion as a motion for summary judgment as the Trust has attached additional documents to

the Complaint and the declaration filed with the Motion.

As for the documents attached to the Complaint, Answer, and Counterclaim Answer, the

Court may properly consider those papers as part of the pleadings.  *See* Fed. R. Civ. P. 10(c).

The "pleadings" include any written instruments attached as exhibits to the complaint and

answer.  *See* Fed. R. Bank. P. 7010; Fed. R. Civ. P. 10(c) ("A statement in a pleading may be

adopted by reference elsewhere in the same pleading or in any other pleading or motion.  A copy

of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Courts may also consider documents incorporated by reference in the pleadings and may take

judicial notice of matters of public record.  *Grochocinski v. Spehar Capital, LLC (In re CMGT,

Inc.)*, 384 B.R. 497, 506 (Bankr. N.D. Ill. 2008); *Martinez v. Bakery & Confectionary Union &

Indus. Int'l Pension Fund (In re Bakery & Confectionary Union & Indus. Int'l Pension Fund)*,

865 F.Supp.2d 469, 472 (S.D.N.Y. 2012).

As for the exhibits attached to Jason C. Rubenstein's declaration in support of the Trust's

Motion, they are all either public court records, of which the Court can take judicial notice, or are

copies of documents that were filed with the pleadings.  *See* Rubinstein Decl. Mot. for J., Exs.

A–G, ECF Nos. 21-1–21-7.  Likewise, the exhibits attached to William D. Sullivan's declaration

in support of the Defendants' Opposition, are also either public court records or copies of

documents that were filed with the pleadings.  *See* Sullivan's Decl. Opp'n to Mot. for J., Exs. A–

H, ECF Nos. 27-1–27-8.  As such, the Court will consider only the exhibits attached to the

declarations and will consider the Motion under the standard outlined in Rule 12(c) for a motion

for judgment on the pleadings rather than as a motion for summary judgment.  The Court will exclude the actual declarations of Rubinstein and Sullivan as outside the scope of the Motion as a precaution, despite the fact they do not add much to the discussion.  *Martinez*, 865 F.Supp.2d  at 472. ("If the Court is presented with material outside of the pleadings, it should exclude the material in its consideration of the motion.").

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).  In considering a motion for judgment on the pleadings, the Court must accept the non-moving party's allegations as true and draw all reasonable inferences in favor of the non-moving party.  *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999); *Bakery & Confectionery*, 865 F.Supp.2d at 471.

   2.   <u>Whether the Trust Had Discretion to Suspend Defendants and the Claims</u>

The standard for a motion for judgment on the pleadings is the proper standard to apply in this case. The Court turns to the merits of the Motion

The Trust was created by Johns-Manville's Second Amended Plan of Reorganization (the "Plan"), which was confirmed in 1986.  *See Findley v. Blinken (In re Joint E. and S. Dist. Asbestos Litig.*; *In re Johns-Manville Corp.)*, 982 F.2d 721, 725 (2d Cir. 1992).  The Trust was designed to satisfy the claims of all current and future asbestos health claimants.  *Id.*  As a condition precedent to confirmation of the Plan, the Bankruptcy Court issued an injunction that channels all asbestos-related personal injury claims against the Debtor to the Trust.  *Id.* at 726. The injunction prevents any individual with a health related asbestos claim— whether or not their claim was discharged in the bankruptcy—from suing Johns-Manville, its related operating

entities, or its insurers. *Id.* Instead, those individuals must look to the Trust for compensation. *Id.*

To determine the extent of the Manville Trustees' power, the Court must independently interpret the terms of the Trust Agreement and other governing documents. *Asbestos Settlement Trust v. City of N.Y. (In re Celotex Corp.)*, 48 F.3d 1320, 1328 (11th Cir. 2007) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) ("As they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation.")). A trustee can only exercise those powers conferred upon him by the trust and those powers necessary to carry out the purposes of the trust so long as they are not forbidden by the trust. *Celotex*, 48 F.3d at 1328. The Manville Trustees' duties and powers are determined by the terms of the Trust Agreement and related documents and not by their own interpretation of the instruments or their own beliefs as to the rule of law. *See id.* (quoting Restatement (Second) of Trusts § 201 cmt. b (1959). It is from the Trust that the Manville Trustees "derive[] the rule of [their] conduct, the extent and limit of [their] authority, the measure of [their] obligation." *Celotex*, 48 F.3d at 1328.

> If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment.

Restatement Second of Trusts § 187, cmt. e (1959). "The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently is not a sufficient reason for interfering with the exercise of the power by the trustee." *Id.*

In this motion, the Trust appears to argue that the Trustees have complete discretion to act for the benefit of the Trust. This is not the case. The Trustees only have discretion to act

within the powers provided to them.  If there was no power to act provided to the Trustees in the

Trust documents, they cannot have had discretion to act.  Thus, the Court must first determine: 1)

whether the Trust had discretion to suspend the processing of Claims already filed with the

Trust; and 2) whether the Trust had the discretion to suspend Defendants from filing future

claims against the Trust.  The Court must look to the Trust Agreement and other governing

documents to make this determination.

Section 3.01 of the Trust Agreement[4] is entitled "Powers" and subsection (a) of that

section states: "Subject to the limitations set forth in this Trust Agreement, the Trustees shall

have the power to take any and all such actions as in the judgment of the Trustees are necessary

or convenient to effectuate the purposes of the Trust . . . ."  Trust Agmt § 3.01(a).

Section 2.02 of the Trust Agreement goes on to define the stated purposes of the Trust, which

include using assets in the Trust estate "to deliver fair, adequate, and equitable compensation to

bona fide Beneficiaries, whether known or unknown, without overpaying or underpaying any

claims . . . ."  *Id.* § 2.02(i).

The Trust argues that §§ 3.01 and 2.02 combined gives the Manville Trustees discretion

to suspend the Defendants and the processing of the Claims.  While the Trust Agreement does

grant the Trustees broad discretion over how to effectuate the purposes of the Trust, the Trustees

can only act within the power provided to them in the Trust Agreement.  It is this Court's duty to

interpret the Trust Agreement independently.

*a. Whether the Trust had the power to suspend the processing of Claims*

As to the first issue, the Court holds that the Trustees did not have the authority to

suspend the processing of Claims.  The Trust Agreement clearly states that the purpose of the

---

[4] The Trust Agreement that is being relied on by Plaintiffs is the "Second Amended and Restated Manville Personal Injury Settlement Trust Agreement," which was amended on December 19, 2006.  *See* Compl., Ex. C.

Trust is to use the assets of the Trust to compensate bone fide Beneficiaries of the Trust. Trust

Agmt § 2.02(i). The term "Beneficiaries" is a defined term under the Plan.[5] Trust Agmt. art. I

("[A]ll capitalized terms used herein and not otherwise defined have the meanings assigned to

them in Exhibit A to the [Plan]."); Mot. 27, ECF No. 20.

    The term "Beneficiary" "means any Person holding a Trust Claim." *See* Garelick Decl.

Ex. A, ECF No. 69 ("Glossary"). In turn, "Trust Claim" "means any Claim asserting Trust

Liabilities to a Beneficiary." *Id.* at 14. "Trust Liabilities" "means all Other Asbestos

Obligations and Allowed AH Claims." *Id.* To determine what that means, you need to look at

the definition for "Other Asbestos Liabilities."

> Other Asbestos Obligations means (a) all debts, obligations or liabilities
> (under any theory of law, equity or admiralty), other than AH Claims, for death,
> personal injuries or personal damages (whether physical, emotional or otherwise)
> to the extent caused or allegedly caused, directly or indirectly, by exposure to
> asbestos (alone or as contained in asbestos-containing products) and arising or
> allegedly arising, directly or indirectly, from acts or omissions prior to the
> Confirmation Date of one or more of the Debtors including, without limitation, all
> obligations or liabilities for compensatory damages (such as loss of consortium,
> wrongful death, survivorship, proximate, consequential, general and special
> damages) and punitive damages and (b) all warranty, guarantee, indemnification or
> contribution liabilities or obligations, if any, of any of the Debtors to any other
> Person to the extent that such warranties, guarantees, indemnifications or
> contribution responsibilities cover claims against such other Person that would, if
> such claims had been made directly against any of the Debtors, constitute Other
> Asbestos Obligations under Clause (a) above.

*Id.* at 10. Thus, a Beneficiary is a person holding a claim against the Trust for death,

personal injuries, or personal damages that was caused (or allegedly caused) by exposure

---

[5] Exhibit A to the Plan is a glossary ("Glossary") of terms found in the Plan and contains the definition of the term "Beneficiary." The Glossary was not attached to the pleadings or any of the moving papers. It was requested by the Court pursuant to an order dated February 24, 2016 and filed by the Trust on March 9, 2016. *See* Garelick Decl. Ex. A, ECF No. 69 ("Glossary"). The parties were given an opportunity to brief the Glossary definition.

to asbestos.  The Trust admits that the Claimants are "bona fide" Beneficiaries,[6] at least for purposes of this Motion.  *See* Mot. 27 n.32.

As bona fide Beneficiaries, they are also holders of Trust Claims.  *Id.* at 27.  The Trust Agreement gives the Manville Trustees the power to "pay . . . Trust Claims . . . in accordance with . . . the Trust Distribution Process."  Trust Agmt § 3.01(b)(iii).

The Trust Distribution Process ("TDP") is incorporated into the Trust Agreement and is the governing document for the Trust's claims resolution process.  Trust Agmt § 2.04; *see also Findley*, 982 F.2d at 726 (stating that the Trust Agreement establishes the Claims Resolution Procedures, which govern how claims are processed by the Trust; the Claims Resolution Procedures were amended by the TDP); Mot. 7 (acknowledging the fact that the TDP governs the Trust's claims resolution process).  The Court notes that while the Trust chose not to include the TDP as part of the copy of the Trust Agreement it provided to the Court, the Trust Agreement refers to the TDP as being annexed.  Trust Agmt § 2.01 ("[T]he Trust Distribution Process, Annex C to this Agreement . . . .").  Thus, it is clear that the TDP was intended to be read as part of and in conjunction with the Trust Agreement.  The Trust also admits in its Motion that the TDP governs the Trust's claims resolution process.  *See* Mot. 7.

The TDP declares that the Trust's goal is to "treat all claimants equitably."  Decl. William D. Sullivan, Ex. B ¶ A ("TDP").  The TDP "furthers that goal by including procedures for processing and evaluating claims generally on an impartial, first-in-first-out . . . basis with the intention of paying all claimants over time as equivalent a share as possible of their claims' value."  *Id.*  The TDP then lays out the procedure the Trust must follow in evaluating claims.

---

[6] The Trust uses the term "beneficiary" throughout its papers.  The Court believes the term should be capitalized because it is a defined term under the Plan.  As such, the Court uses the term "Beneficiary" in this Memorandum Decision to make clear that it is interpreting the Trust documents and not re-defining the term.

Initially, the Trust must establish whether a claim meets the criteria for certain asbestos-related diseases described in the TDP. "If a claim does not meet the [c]ategorization [c]riteria . . . the claimant may elect to have the claim individually evaluated by the Trust . . . ." *Id.*

The TDP also regulates how the Trust must proceed with claims that do not contain adequate supporting medical evidence. The Trust is to "categorize or individually evaluate claims based on medical evidence already submitted to the Trust as part of the claimant's proof of claim." TDP ¶ C(7). Claimants "may, but need not, supplement this information with current medical evidence." *Id.* Where a claimant has filed an incomplete proof of claim for categorization or individual evaluation, the Trust will notify the claimant of the need for additional information and the Trust need not process the claim until the file is complete." *Id.*

Before making any payments on a claim, the Trust "must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards." TDP ¶ E(1)(A)(b). The TDP allows the Trust to request additional documents to bolster the credibility of medical evidence. *Id.*

The TDP also sets up "Audit Procedures" for the Trust to employ if it believes that the medical evidence submitted is not reliable. TDP ¶ C(8). The Trust argues that the Audit Procedures outlined in the TDP are not mandatory and the Court agrees. The Trustees are not required to perform an audit; however their powers derive from the Trust documents and an audit is the only remedy provided to the Trust for determining the reliability of medical evidence. *Id.* Whether the Trust should exercise its power to audit is not for the Court to determine. The Court's role in this matter is to ensure that the Trust is operating within the bounds of its powers, as provided in the Trust documents.

As of the date of the Complaint, there were 27 Claims pending in various stages of processing and 90 additional claims were registered but not fully submitted.  Compl. ¶ 25.  The processing of these claims was suspended on May 30, 2014.  Compl. Ex K, at 1 ("Ltr. dated Sept. 19, 2014 to Mandelbrot") ("[E]ffective immediately, the Manville Personal Injury Trust . . . is suspending the processing of claims filed by you or by the Mandelbrot Law Firm . . . .").  The Trust argues that continuing to process the Claims is not required by the Trust documents and would be costly and inefficient.  The Court need not evaluate how costly or efficient such a determination would be, as the Trust is bound to resolve the Claims pursuant to the TDP.  *See* TDP ¶ B(2) ("As a proof of claim is reached in the [first-in-first-out] queue, the Trust ***will*** evaluate it to determine whether the claim meets the Categorization Criteria for a Scheduled Disease and shall advise the claimant of its determination.") (emphasis added).

The Trust has no choice in the matter.  It must evaluate each of the claims submitted to it in first-in, first-out order.  The Trust failed to do that here.  Instead of evaluating the Claims, the Trust suspended their processing and removed them from the queue.  Ltr. dated Sept. 19, 2014 to Mandelbrot at 2 (stating that the Trust "made no judgment whether the pending Mandelbrot claims are reliable.").  The Trust lacked the authority to suspend the Claims under the terms of the TDP.

Moreover, the Trust failed to notify the Claimants of its decision.  Throughout, the TDP provides that the Trust may request additional information from claimants and sets forth procedures for claimants to request the Trust take action on his or her claim.  *See, e.g.*, TDP ¶ A ("[C]laimant may elect to have claim individually evaluated . . . .").  These provisions imply that the claimants will receive notice of the insufficiencies in their claims.  In at least one section, the TDP clearly states that notice should be sent to claimants when a claim is insufficient.  *See* TDP

¶ C(7) ([T]he Trust will notify the claimant . . . .").  The Trust is also required to notify claimants

if it determines that a claim does not meet categorization criteria.  *See* TDP ¶ B(2)(a).  The TDP

does not indicate how claimants should be noticed, although the Trust Agreement (to which the

TDP is annexed) states that "Notices to Persons asserting Trust Claims shall be given at the

address of such Person, or, where applicable, such Person's legal representative, in each case as

provided on such Person's Proof of Claim."  Trust Agmt § 6.06.

  Under the Trust Agreement and TDP, the Trustees do not have the power to suspend the

Claims and, as such, it is not a question of whether the Trust used its discretion properly.  The

Trust has a duty to evaluate the Claims on a first-in, first-out basis and to notify each Claimant of

its decision.  The Trust also has a duty to advise the Claimants regarding the sufficiency of

medical evidence and their ability to supplement each claim, if necessary.  The Court does not

believe the letters the Trust sent to Mandelbrot are sufficient to put the Claimants on notice that

their Claims were being suspended.  Nor did the letters provide the Claimants with the

procedures to follow for having their Claims reconsidered.  The letters were not copied to the

Claimants and the letters advised that the Claimants needed to obtain a new attorney or refile

their Claims in order for their Claims to be considered.  This is not the procedure that the Trust is

required to follow as outlined in the TDP.

  The Trust must notice the Claimants directly (and not through Mandelbrot) as the Trust

owes a duty to the Trust Beneficiaries.  The Trust has argued that it cannot communicate with the

Claimants directly as New York Rule of Professional Conduct 4.2 prohibits such

communication.  *See* N.Y. R. Prof'l Conduct 4.2(a).  While that Rule does prohibit a lawyer from

communicating with a party the lawyer knows to be represented by another lawyer in the matter,

the Rule also provides that "a lawyer may cause a client to communicate with a represented

person . . . and may counsel the client with respect to those communications, provided the lawyer gives reasonable advance notice to the represented person's counsel that such communications will be taking place." *See* N.Y. R. Prof'l Conduct 4.2(b). Comment 11 to that Rule makes clear that client-to-client communication is permitted. *See* N.Y. R. Prof'l Conduct 4.2 cmt.11 ("Persons represented in a matter may communicate directly with each other."). So while counsel for the Trust cannot communicate with the Claimants, nothing prohibits the Trustees from communicating with the Claimants directly, provided notice is given to Defendants. The Trust must take the steps necessary to ensure that the Claimants are noticed of the status of their Claims and the procedures available to them under the Trust Agreement and TDP.

To be clear, the Court is not ruling that the Claimants are *bona fide* Beneficiaries, the Court is only accepting the Trust's assertion that they are for the purpose of this motion. The Court holds only that the Trust did not have discretion to suspend the processing of the Claims without first determining that they are not *bona fide* Beneficiaries and without following a process set forth in the TDP. The Trust has the discretion to make this determination by way of an audit, or by assessing the claims that were filed individually, or in any other way provided by the TDP.

### b. Whether the Trust could suspend Defendants from filing new claims?

As to the second issue, the Court holds that the Trustees did have discretion to ban Defendants from filing additional claims against the Trust. Defendants claim to be Beneficiaries of the Trust. *See* Ans. ¶¶ 10 ("Defendants have standing as . . . a beneficiary of the Trust . . . ."); 31 ("Mandebrot is a beneficiary . . . ."); 32 (same); 65 ("Mandelbrot has a right to receive funds from the Trust and is a "beneficiary" with a right to receive funds from the Trust through a contract."). This is not the case. Defendants are not Beneficiaries as defined by the Glossary, as

they do not have claims against the Trust for personal injuries or damages caused by asbestos exposure. The Trust owes Defendants no duty and it is well within the discretion of the Trust to suspend Defendants from filing future claims.

Here, the Trust had adequate evidence that Defendants had filed false claims against other asbestos trusts and it used its discretion to suspend the filing of future claims to prevent depletion of the Trust estate. The Court may only upset the Trust's decision if there is an abuse of discretion on the part of the Trust. Defendants argue that the Trust's failure to consider the facts and circumstances surrounding Defendants' exclusion from filing with other asbestos trusts is an abuse of the Trust's discretion. The Court disagrees. The Trust had documents from several courts establishing Defendants had filed unreliable claims against multiple asbestos trusts.

The Trustee received information that Defendants had filed unreliable evidence and false claims in other cases. The Trustees reviewed that evidence and determined that there was a sufficient risk that more false claims could be filed with the Trust causing the depletion of the Trust estate. Whether the claims were intentionally filed by Defendants or whether they were filed as a result of Defendants' negligent supervision of its staff is not at issue here.

The Trust need not have waited for there to be an actual finding of a false claim being filed. Once armed with the information that the Trust could be in danger, the Trustees had the power and the duty to preserve the estate. Allowing Defendants to file additional claims would cost the estate, if only as a result of the need to investigate those claims more closely. In order to preserve the estate, the Trustees suspended Defendants from filing claims with the Trust and the Court believes this decision to have been within the bounds of reasonable judgment. The Court

also believes the letter provided to Mandelbrot alerting him to his suspension was a reasonable

way to put Defendants on notice (as opposed to the Claimants) of their suspension.

The Defendants also contend that the Electronic Filer Agreement[7] between the

Defendants and the Claims Resolution Management Corporation[8] ("CRMC") entitles the

Defendants to receive payment from the Trust and makes him a beneficiary of the Trust.  Ans. ¶

10.  Nothing in the Electronic Filer Agreement or the Hybrid Filer Agreement entitles

Defendants to receive money from the Trust.  In fact, the Electronic Filer Agreement relied on by

Defendants states: "The CRMC's granting of access to the e-Claims system does not ensure that

a particular CRMC Client will permit Customer to submit e-Claims filings related to that CRMC

Client."  Answer, Ex. E at § 8.2, ECF No. 15 ("Electr. Filer Agmt.").  The Electronic Filer

Agreement also declares: "Either Party may terminate this Agreement upon written notice to the

other Party.  Upon the effective date of termination of this Agreement, the CRMC will cease

providing the Customer with access to its e-Claims system, and the Customer will cease making

e-Claims filings."  *Id.* § 9.2.  Thus, the Electronic Filer Agreement cannot be the basis for

Mandelbrot's Beneficiary status.  Nor can it be the basis for any claim against the Trust for

damages.  *Id.* § 8.1 ("Except as specifically provided in this Agreement, or as otherwise required

by law, no officer, director, trustee, employee, contractor or agent of the CRMC or its Clients

will be held liable for any indirect, incidental special or consequential damages by reason of

Customer's use of the e-Claims system.").

---

[7] The Electronic Filer Agreement was filed as exhibit E to the Defendants' Answer and is signed and dated by
Mandelbrot on October 5, 2011.  It is not counter-signed by the CRMC.  The Trust filed a document entitled the
Hybrid Filer Agreement as exhibit D to the Complaint.  That agreement was signed by Mandelbrot and the CRMC
in July 2007.  The Hybrid Filer Agreement contains the exact same language at §§ 7.2 and 8.2 respectively.  Compl.,
Ex. D at § 8.2, ECF No. 1 ("Hybrid Filer Agmt").
[8] CRMC is the claims processing agent that the Manville Trust contracts with to process its claims.

Defendants also argue that they are entitled to pursue claims against the Trust on account of filing claims on behalf of the Claimants.  In other words, if a Claimant receives money from the Trust, Mandelbrot might be entitled to a portion of that money as a legal fee.  This does not make Defendants "claimants" of the Trust.  It makes them lawyers with a typical agreement between themselves and their clients.  Collection of any monies owed to Defendants by the Claimants is for Defendants and their clients to work out outside of the Trust and outside of bankruptcy.

3.  <u>Motion to Dismiss Counterclaims</u>

The Trust also moved to dismiss all of the Defendants' Counterclaims.  The Trust argues that the Court does not have jurisdiction over the counterclaims.  The Court finds that it has jurisdiction over these counterclaims as they concern the scope if the Manville Trustees' authority and the power of the Manville Trust.  This Court therefore has jurisdiction over this proceeding under 28 U.S.C.§§ 157(a) and 1334 and the Confirmation Order.  The Plan expressly reserved this Court's jurisdiction to determine "disputes arising under" the Plan, to enforce and administer the Plan, and "[t]o enter such orders as may be necessary or appropriate to facilitate implementation of the Plan."  Plan ¶ 10.1(B), (G), (L).  Similarly, the Trust Agreement provides this Court with "exclusive jurisdiction to hear and resolve any and all matters relating to the powers and authority of the Trustees hereunder, and any actions or omissions by them, the operations or activities of the Trust and the interpretation of this Agreement."  Trust Agmt. § 6.13.

The Trust also argues that Defendants lack standing to bring the counterclaims—the Court agrees.

Consistent with the rule against granting litigants standing to argue the rights of third parties, it has long been the rule that only the

> beneficiary or trustee of an express trust has standing to sue to establish and enforce the trust. The Restatement of Trusts clearly states that "[n]o one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin redress for a breach of trust." Restatement (Second) of Trusts § 200 (1959).

*McHale v. Boulder Capital LLC (In re 1031 Tax Grp., LLC),* 439 B.R. 47, 64 (Bankr. S.D.N.Y. 2010). Defendants are not Beneficiaries of the Trust and as such do not have standing to assert claims against the Trust. *Mandelbrot v. Armstrong World Indus. Asbestos Personal Injury Settlement Trust,* 618 Fed. App'x 57, 58 (3d Cir. 2015) ("Only claimants themselves, not the claimants' representatives, have standing to assert legally cognizable claims against a trust. In other words, no one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust."). Although Defendants allege that at least some of their counter-claims are brought on behalf of the Claimants, none of the Claimants are parties to this action.

Moreover, standing cannot be conferred on Defendants based upon injuries caused by the Trust to the Claimants. *Mandelbrot,* 618 Fed. App'x at 58 ("The loss of any attorney's fees that Mandelbrot might have received is insufficient to create an injury in fact.") (citing *Diamond v. Charles*, 476 U.S. 54, 71 (1986). The harms, if any, to the beneficiaries, are solely incidental to the Defendants' harms and therefore cannot create standing.

Therefore, all of Defendants counterclaims must be dismissed for lack of standing.

4. Motion for Sanctions

Defendants seek to impose sanctions on the Trust, and on counsel to the Trust, Jared Garelick and Jason Rubinstein (collectively "Plaintiff" for purposes of the motion for sanctions),

pursuant to Federal Rule of Civil Procedure 11.[9]  Defendants' prayer for relief requests the Court

to strike the Complaint, impose monetary sanctions, and to make a finding of bad faith on the

part of Garelick and Rubinstein.  Mot. Sanctions 20, ECF No. 17.  Plaintiff opposes the

imposition of sanctions, arguing that Defendants did not satisfy the 21-day notice requirements

of the Rule, and, in the alternative, that Defendants' motion does not establish sanctions are

warranted.  *See* Opp'n Sanctions 6, 8–14, ECF No. 23.  Plaintiff further requests that the Court

award costs and attorneys' fees that Plaintiff incurred in opposing Defendants' motion for

sanctions.  *Id.* at 14–15.

Federal Rule of Civil Procedure 11 is not explicitly incorporated by the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rule").  Instead, Bankruptcy Rule 7011 explains that

"Federal Rule 11 is not included in the adversary rules, but it is applicable to adversary

proceedings under the adaptation thereof found in Bankruptcy Rule 9011."  Thus, the Court will

treat Defendants' motion as one brought under Bankruptcy Rule 9011.  Bankruptcy Rule 9011(c)

provides for sanctions when the Court determines that a party has violated subsection (b) of

Bankruptcy Rule 9011.  The case law interpreting Federal Rule of Civil Procedure 11 informs

the Bankruptcy Court's decision on a motion for sanctions made pursuant to Bankruptcy Rule

9011.  *Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.)*, 279

F.3d 148, 151 (2d Cir. 2002) (citations omitted).

Bankruptcy Rule 9011(b) provides that by the presentation of

a petition, pleading, written motion, or other paper, an attorney or unrepresented
party is certifying that to the best of the person's knowledge, information, and
belief, formed after an inquiry reasonable under the circumstances,

---

[9] Defendants filed a substantially similar motion for sanctions in the main bankruptcy case, docket number 82-11656.  *See* Notice of Motion and Motion for Sanctions pursuant to Fed. Rules of Civil Procedure, Rule 11, *In re Johns-Manville Corp.*, No. 82-11656 (Bankr. S.D.N.Y. Oct. 6, 2015), ECF No. 4183; Memorandum of Points and Authorities in Support of Motion for Sanctions pursuant to Fed. Rules of Civil Procedure, Rule 11, *In re Johns-Manville Corp.*, No. 82-11656, ECF No. 4184.  This decision resolves both of the motions for sanctions.

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).  The law requires that filings are for a proper purpose, claims are warranted by existing law or are non-frivolous, allegations that have or are likely to have evidentiary support after a reasonable opportunity to investigate, and warranted or reasonable denials of factual allegations.  *Id.*

Bankruptcy Rule 9011 "plays an important role in maintaining the professionalism of the bar and the integrity of court processes.  That role is best effectuated when the Rule is invoked sparingly, and '[a] request for sanctions under Rule 11 is not a tactical device.'"  *In re Taub*, 439 B.R. 276, 281 (Bankr. E.D.N.Y. 2010) (quoting *Nakash v. U.S. Dep't of Justice*, 708 F. Supp. 1354, 1370 (S.D.N.Y. 1988)).

Bankruptcy Rule 9011(c) provides for a 21-day safe harbor provision, which requires the moving party to notify and serve the appropriate opposing parties at least 21 days before the motion for sanctions is filed with the Court.  Fed. R. Bankr. P. 9011(c)(1)(A).  The safe harbor provision is a procedural requirement that must be complied with.  *See Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002).  To satisfy this procedural requirement, "Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can

prepare a defense.'" *Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682

F.3d 170, 175 (2d Cir. 2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323,

334 (2d Cir. 1999)).  The Rule's 21-day safe harbor provision only requires "the service of '[a]

motion' or '[t]he motion.'  It does not require the service of a memorandum of law or affidavits,

nor does it use the words 'formal fully supported motion.'"  *Star Mark Mgmt.*, 682 F.3d at 176

(internal citations omitted) (quoting *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243

F.R.D. 322, 339 (N.D. Iowa 2007)).

Here, Defendants served Plaintiff with notice of the motion for sanctions, in compliance

with the 21-day safe harbor provision of Rule 11.  Defendants timely mailed Plaintiff a letter on

September 11, 2015.  Mot. Sanctions Ex. D, at 1,   Defendants did not file the motion for

sanctions with the Court until October 6, 2015, roughly 25 days after the date of the letter.  In the

letter, Defendants assert Plaintiff's verified complaint is clearly in violation of Rule 11 of the

Federal Rules of Civil Procedure, and that the letter shall serve as notice to trigger the 21-day

safe harbor provision.  *Id.* at 1.  The letter also includes an outline of the legal and factual points

in support of Defendants' motion for sanctions, which provide the grounds for the intended

sanctions motion.  *Id.* at 1–2.  Defendants allege Plaintiff's complaint was meant to harass, cause

delay and needlessly increase the costs of litigation, in violation of, what Defendants allege to be

this Court's "clear guidance" that suspension was unauthorized.  *Id.* at 1.  Defendants also

contend the complaint contains legal and factual allegations that are unwarranted by law, and

unsupported by any evidence, as the arguments rely on bad law, and the facts are, according to

Defendants, clearly erroneous based on identified conflicting evidence.  *Id.* at 2.  Defendants'

letter satisfies the standard for compliance with the Rule's 21-day safe harbor provision.  *See*

*Star Mark Mgmt*, 682 F.3d at 175.

Plaintiff does not dispute that it had notice of Defendants' intention to file a motion for sanctions. Opp'n Sanctions 8. Instead, Counsel argues that the Rule requires service of the actual motion, and that Defendants two page letter was insufficient. *Id.* at 7. Counsel's argument is contrary to controlling law, which holds that service of the motion need not include a memorandum of law or affidavits. *See Star Mark Mgmt.*, 682 F.3d at 176 (citations omitted). Further, Defendants letter comprehensively informs Plaintiff of the grounds for the sanctions motion. Mot. Sanctions Ex. D, at 1–2. The Court finds that Defendants complied with the 21-day safe harbor provision.

Despite the fact Defendants' motion is not procedurally deficient, the Court finds that sanctions are unwarranted. Defendants claim Plaintiff filed and verified the complaint in this adversary proceeding for the improper purposes of harassing Defendants, delaying payments to beneficiaries in clear contravention of controlling Trust procedures, and unnecessarily increasing litigation costs. *Id.* at 11–13. Defendants allege the complaint is patently frivolous with no chance of success on the merits, requests relief for which it is clear there is no legal remedy, and is contrary to this Court's warning that the Trust's suspension of Defendants was unauthorized. *Id.* at 13–16. Defendants allege Counsel filed a complaint without any evidentiary support, and unreasonably failed to investigate or audit the claims Defendants filed, despite the time and evidence available. *Id.* at 19.

"At a minimum, Rule 9011(b)(3) places on attorneys a duty to make at least some affirmative investigation into the facts represented in documents submitted to the court." *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 585 (Bankr. E.D.N.Y. 2014). Plaintiff attached 13 exhibits to the complaint. *See generally* Compl. Exs. A—M. Plaintiff investigated the allegations of the complaint and attached supporting evidence. *See id.* Further, Defendants

should not confuse a motion for sanctions with a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim for relief.  A "Rule 11 motion[] should not be used

to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available

for those purposes." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008)

(citation omitted) (internal quotation marks omitted).  The Court finds that the complaint is not

worthy of sanctions on grounds of frivolity, or on the basis that Plaintiff failed to investigate the

available evidence.

Plaintiff did not file the complaint against this Court's instructions.  At the July 16, 2015

Hearing, this Court instructed the Trust that it could not suspend the processing of Claims

without some sort of notice.  Tr. July 16, 2015 Hearing 18:2–10, *In re Johns-Manville*, No. 82-

11656.  In response, Plaintiff filed this adversary proceeding, seeking a declaratory judgment that

the Trust has the authority to suspend individuals from filing claims.  *See* Compl. 22.  Despite

Defendants' arguments to the contrary, there was no "clear guidance" from this Court that the

Trust's suspension of Defendant was unauthorized.  *See* Tr. July 16, 2015 Hearing 18:7, *In re

Johns-Manville*, No. 82-11656.  This Court merely overruled Defendants' objection to the

accounting report at the July 16, 2015 Hearing.  *See id.* at 18:10–14.  The Court did not

determine that the Trust lacked the authority to suspend Defendants from filing claims.  *Id.* at

18:7.  Not only did the Trust file the Complaint in response to the Court's instructions to give

Defendants' notice, the Complaint is not frivolous.  As determined by this Court, the Trust does

have discretion to suspend Defendants from filing further claims with the Trust.  Based on the

law cited, the allegations in the complaint, and the evidence attached, the Trust's cause of action

has a reasonable basis in law and fact.  *Stern*, 844 F.2d at 1005.

Plaintiff, the prevailing party on this sanctions motion, seeks fees and costs incurred defending against this motion for sanctions, pursuant to Bankruptcy Rule 9011(c)(1)(A).  The "American Rule," which is the general rule, provides that a litigant is responsible for his or her own attorneys' fees, and has no right to repayment by his or her opponent.  *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 245, 247, 257 (1975).  This default rule may be overcome by statute.  *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967).  Here, Bankruptcy Rule 9011(c)(1)(A) provides that "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion."  A court may award costs and fees for the prevailing party "where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose . . . ."  *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (quotations omitted).  Denying Defendants' motion for sanctions does not require the Court to award costs and fees to the prevailing party.

In determining whether a motion for sanctions is itself sanctionable, courts have considered the duplicative nature of the sanctions motion.  Where the motion for sanctions merely repeats the substance of another motion on the docket, clearly creating unnecessary and pointless litigation, courts have awarded the prevailing party its costs.  *See e.g.*, *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 630 (D.N.J. 2004); *Jawbone v. Donohue*, 2002 U.S. Dist. LEXIS 11806, at *19–20 (S.D.N.Y. June 28, 2002).  Here, as Plaintiff contends, the motion for sanctions "does not identify a single false or erroneous factual assertion in the Complaint."  Opp'n Sanctions 13.  Defendants' motion for sanctions does not regurgitate the merits of the underlying dispute.  Instead, the motion for sanctions expresses Defendants' belief that Plaintiff behaved wrongly in bringing the Complaint.  Further, Defendants' arguments,

although not successful, do not approach frivolous proportions.  Despite denying the motion for sanctions, the Court does not believe Plaintiff is entitled to an award for the costs associated in defending against Defendants' motion for sanctions.

### <u>Conclusion</u>

The Trust's motion seeking a declaratory judgment that the Trustees have discretion to suspend the processing of the Claims is denied.  The Trust's motion seeking a declaratory judgment that the Trustees have the discretion to suspend the Defendants from filing claims against the Trust is granted.  The Trust's motion to dismiss Defendant's counterclaims is granted as Defendants lack standing to assert those claims.   The Defendant's motion for sanctions is denied.  Plaintiff's request for costs and fees for defending the motion is also denied.

Plaintiff shall submit a proposed order consistent with this Memorandum Decision.



**Dated: March 23, 2016**
     **Poughkeepsie, New York**

/s/ **Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**